**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1) MANSFIELD HELIFLIGHT, INC. | ) | |
| | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | Case No.: CIV-13-282-R |
| | ) | |
| 1) GRIZZLY HELO LEASING, LLC, | ) | Judge: David Russell |
| 2) WYPT HOLDING COMPANY, | ) | |
| 3) STUART FREDERICK HALL, | ) | |
| | ) | |
| Defendant(s). | ) | |

## DEFENDANTS' ORIGINAL ANSWER AND 12(b) DEFENSES

Grizzly Helo Leasing, LLC (hereinafter "Grizzly"), WYPT Holding Company (hereinafter "WYPT"), and Stuart Frederick Hall (hereinafter "Hall"), collectively referred to as "Defendants" submit their Original Answer and would show the Court as follows:

## I.      INTRODUCTION

1.      As to paragraph number 1 of Plaintiff's Complaint, Defendants deny the allegations.

2.      As to paragraph number 2 of Plaintiff's Complaint, the allegations are allegedly statements of law or legal conclusions requiring no response, and, therefore, are denied.

3.      As to paragraph number 3 of Plaintiff's Complaint, the allegations are allegedly statements of law or legal conclusions requiring no response, and, therefore, are denied.

4.      As to paragraph number 4 of Plaintiff's Complaint, Defendants deny the allegations.

5.      As to paragraph number 5 of Plaintiff's Complaint, Defendants deny the allegations.

6.      As to paragraph number 6 of Plaintiff's Complaint, Defendants deny the allegations.

7.      As to paragraph number 7 of Plaintiff's Complaint, Defendants deny the allegations.

8.      As to paragraph number 8 of Plaintiff's Complaint, Defendants deny the allegations; Grizzly further notes that the allegation that it has "never disputed the merits of Mansfield's allegations" is false and is directly contradicted by the pleadings in the Texas action (in addition to other pleadings in which Defendant "denie[d] each and every, all and singularly, the material allegations in Plaintiff's petition, and any amendments or supplements thereto, in accordance with Texas Rule of Civil Procedure 92 and demand[ed] strict proof thereof.")  Grizzly admits that it publically de-registered any interest in an aircraft that it owned by a filing with the FAA registry in Oklahoma City, OK.

9.      As to paragraph number 9 of Plaintiff's Complaint, Defendants admit only that Mansfield voluntarily dismissed its claims against Grizzly and that no order granting

Grizzly's jurisdictional challenge was ever signed by the Texas court; otherwise, Defendants deny the allegations.

10. As to paragraph number 10 of Plaintiff's Complaint, Defendants deny the allegations.

## II. JURISDICTION

11. As to paragraph number 11 of Plaintiff's Complaint, the averments are allegedly statements of law or legal conclusions requiring no response, and, therefore, are denied.

12. As to paragraph number 12 of Plaintiff's Complaint, the averments are allegedly statements of law or legal conclusions requiring no response, and, therefore, are denied.

## III. PARTIES[1]

13. As to paragraph number 13 of Plaintiff's Complaint, Defendants cannot either admit or deny and, therefore, the allegations are denied.

14. As to paragraph number 14 of Plaintiff's Complaint, Defendants admit the allegations.

15. As to paragraph number 15 of Plaintiff's Complaint, Defendants deny the allegations.

16. As to paragraph number 16 of Plaintiff's Complaint, Defendants deny the allegations.

---

[1] Plaintiff's Complaint mis-numbers this section as "II" again. To prevent confusion, Defendants will treat the sections as if Plaintiff properly numbered them.

17.     As to paragraph number 17 of Plaintiff's Complaint, Defendants deny the allegations.

## IV.     GENERAL ALLEGATIONS

### History of the Aircraft

18.     As to paragraph number 18 of Plaintiff's Complaint, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and, therefore, the allegations are denied.

19.     As to paragraph number 19 of Plaintiff's Complaint, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and, therefore, the allegations are denied.

20.     As to paragraph number 20 of Plaintiff's Complaint, Defendants admit that USAU insured serial number 53072 at the time of the total loss; otherwise, Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations, and, therefore, the allegations are denied.

21.     As to paragraph number 21 of Plaintiff's Complaint, Defendants admit that Fifth Third provided USAU a blank FAA bill of sale, that no FAA bill of sale was transmitted to Turbines, and that the parts sold to Turbines came from a helicopter that had been declared a "total loss" by USAU; otherwise, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and, therefore, the allegations are denied.

22.     As to paragraph number 22 of Plaintiff's Complaint, Defendants admit only that the bid process for the wreckage clearly indicated that the "total loss" salvage was

sold as parts only (not as an FAA-recognized helicopter or aircraft), that there would be no FAA bill of sale for the wreckage, that the data plate for the helicopter would be removed and sent back to Bell, that the wreckage would not include the helicopter logbooks (since only salvaged parts were being sold), that the wreckage would not include the engines, and that, by bidding on the wreckage, both Mansfield and Turbines agreed to these conditions; otherwise, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and, therefore, the allegations are denied.

23. As to paragraph number 23 of Plaintiff's Complaint, Defendants admit that the bid process for the wreckage clearly indicated that the "total loss" salvage was sold as parts only (not as an FAA-recognized helicopter or aircraft), that there would be no FAA bill of sale for the wreckage, that the data plate for the helicopter would be removed and sent back to Bell, that the wreckage would not include the helicopter logbooks, that the wreckage would not include the engines, and that, by bidding on the wreckage, both Mansfield and Turbines agreed to these conditions; otherwise, Defendants deny the allegations.

24. As to paragraph number 24 of Plaintiff's Complaint, Defendants admit that Turbines, Ltd. was the successful bidder for the "total loss" salvage and that Turbines, Ltd. received the "total loss" salvage from USAU without an FAA bill of sale, without a data plate, without logbooks, and on notice that the data plate was being returned to the manufacturer; otherwise, Defendants deny the allegations.

25.     As to paragraph number 25 of Plaintiff's Complaint, Defendants deny the allegations; Defendants further note that testimony taken in the Texas action from Turbines and Mansfield directly contradicts this allegation because Turbines did not sell anything (much less a helicopter) to Mansfield and Turbines sold only parts to Tempest (not a helicopter).

26.     As to paragraph number 26 of Plaintiff's Complaint, Defendants deny the allegations, and, based on sworn testimony from the Texas action, deny that Turbines sold any part of the alleged helicopter to Mansfield.  However, Defendants admit that Turbines issued a bill of sale, using an FAA-approved form, years after it had sold the "total loss" salvage to Tempest.

27.     As to paragraph number 27 of Plaintiff's Complaint, Defendants deny that the wreckage acquired by Mansfield could be returned to service as an aircraft under the Federal Aviation regulations or under the manufacturer's service literature because of the damage to the helicopter; otherwise, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and, therefore, they are denied.

28.     As to paragraph number 28 of Plaintiff's Complaint, Defendants deny that the wreckage acquired by Mansfield could be re-certified as an aircraft under the Federal Aviation regulations and further deny that Mansfield could reasonably believe it acquired either a helicopter or a serial number, since the helicopter data plate containing the serial number had been removed and returned to Bell in a procedure agreed to by both Mansfield and Turbines; otherwise, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and, therefore, they are denied.

## Mansfield's Investigation

29.     As to paragraph number 29 of Plaintiff's Complaint, Defendants deny the allegations.

30.     As to paragraph number 30 of Plaintiff's Complaint, Defendants deny the allegations.

31.     As to paragraph number 31 of Plaintiff's Complaint, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and, therefore, they are denied.

32.     As to paragraph number 32 of Plaintiff's Complaint, Defendants deny the allegations.  Defendants further note that this allegation is contradicted by sworn testimony in the Texas action, which indicated that Mansfield knew it would receive neither an aircraft nor title to an aircraft during the 2008 timeframe; that Mansfield knew the terms of the original sale of salvage parts to Tubines would occur without an FAA bill of sale; that Mansfield knew that the sale of salvage parts to Turbines would occur without a data plate; and that Mansfield knew the terms of the original sale of salvage parts to Turbines would occur without any of the aircraft logbooks.

33.     As to paragraph number 33 of Plaintiff's Complaint, Defendants deny the allegations.  Defendants note that sworn testimony from Turbines in the Texas action states that the salvage was sold as "parts" only, not as a helicopter, and that no FAA bill of sale accompanied the parts sale.

34.     As to paragraph number 34 of Plaintiff's Complaint, Defendants admit only that serial number 53072 was registered with the FAA registry in August 2006, prior to

the purchase of the "total loss" salvage parts by Mansfield; otherwise, Defendants deny the allegations.

35.    As to paragraph number 35 of Plaintiff's Complaint, Defendants deny the allegations.  In particular, Defendants deny that Turbines ever owned title to a Bell 407, serial number 53072, and admit that the bill of sale signed by Fifth Third in blank is not in the aircraft file.

36.    As to paragraph number 36 of Plaintiff's Complaint, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and, therefore, they are denied.

37.    As to paragraph number 37 of Plaintiff's Complaint, Defendants admit that the Fifth Third bill of sale signed in blank is not the bill of sale on file at the FAA; otherwise, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and, therefore, they are denied.

**Grizzly's Fraudulent Filings with the FAA Registry in Oklahoma City**

The Regulatory Environment

38.    As to paragraph number 38 of Plaintiff's Complaint, the allegations are allegedly statements of law or legal conclusions requiring no response, and, therefore, are denied.

39.    As to paragraph number 39 of Plaintiff's Complaint, the allegations are allegedly statements of law or legal conclusions requiring no response, and, therefore, are denied.

40.     As to paragraph number 40 of Plaintiff's Complaint, the allegations are allegedly statements of law or legal conclusions requiring no response, and, therefore, are denied.

41.     As to paragraph number 41 of Plaintiff's Complaint, the allegations are allegedly statements of law or legal conclusions requiring no response, and, therefore, are denied.

42.     As to paragraph number 42 of Plaintiff's Complaint, the allegations are allegedly statements of law or legal conclusions requiring no response, and, therefore, are denied.

43.     As to paragraph number 43 of Plaintiff's Complaint, the allegations are allegedly statements of law or legal conclusions requiring no response, and, therefore, are denied.

44.     As to paragraph number 44 of Plaintiff's Complaint, the allegations are allegedly statements of law or legal conclusions requiring no response, and, therefore, are denied.

45.     As to paragraph number 45 of Plaintiff's Complaint, the allegations are allegedly statements of law or legal conclusions requiring no response, and, therefore, are denied.

46.     As to paragraph number 46 of Plaintiff's Complaint, the allegations are allegedly statements of law or legal conclusions requiring no response, and, therefore, are denied.

47.     As to paragraph number 47 of Plaintiff's Complaint, the allegations are allegedly statements of law or legal conclusions requiring no response, and, therefore, are denied.

48.     As to paragraph number 48 of Plaintiff's Complaint, the allegations are allegedly statements of law or legal conclusions requiring no response, and, therefore, are denied.

49.     As to paragraph number 49 of Plaintiff's Complaint, the allegations are allegedly statements of law or legal conclusions requiring no response, and, therefore, are denied.

50.     As to paragraph number 50 of Plaintiff's Complaint, the allegations are allegedly statements of law or legal conclusions requiring no response, and, therefore, are denied.

<u>Grizzly's Fraudulent Filings with the FAA</u>

51.     As to paragraph number 51 of Plaintiff's Complaint, Defendants deny the allegations.

52.     As to paragraph number 52 (including without limitation subparts a through c) of Plaintiff's Complaint, Defendants deny the allegations.

53.     As to paragraph number 53 of Plaintiff's Complaint, Defendants deny the allegations.

54.     As to paragraph number 54 of Plaintiff's Complaint, Defendants deny the allegations.

55.     As to paragraph number 55 of Plaintiff's Complaint, Defendants deny the allegations.

56.     As to paragraph number 56 (including without limitation subparts a through n) of Plaintiff's Complaint, Defendants deny the allegations.

57.     As to paragraph number 57 of Plaintiff's Complaint, Defendants deny the allegations.

## The Conspiracy to Defraud and Appropriate the Aircraft

58.     As to paragraph number 58 of Plaintiff's Complaint, Defendants deny the allegations.  Defendant Grizzly notes, in particular, that it did not even exist in 2004, which is well-known to Plaintiff from sworn testimony in the Texas action and from documents produced in the Texas action, and that neither Grizzly, WYPT, or Hall participated in the salvage bid process conducted by USAU.

59.     As to paragraph number 59 of Plaintiff's Complaint, Defendants admit only that Plaintiff and Turbines consented to the removal of the data plate by bidding on the wreckage and that Plaintiff was aware, before its purchase, that the wreckage would not have a data plate, log books, engines, or an FAA registration; further, Plaintiff and Turbines are and were well-aware of the importance of removing the data plate and similar practices from scrap, unairworthy, or junk parts, within the structure provided by the Federal Aviation Regulations, the associated regulatory material, and industry custom and practice; otherwise, Defendants deny the allegations.

60.     As to paragraph number 60 of Plaintiff's Complaint, Defendants deny the allegations.  Defendant Grizzly would note that, at the time of the alleged removal of the

data plate, it did not even exist, making an agreement to such a plan an impossibility. This factual impossibility was known to Plaintiff prior to Plaintiff's filing this fraudulent claim of ownership and title.

61.     As to paragraph number 61 of Plaintiff's Complaint, Defendants deny the allegations.

62.     As to paragraph number 62 of Plaintiff's Complaint, Defendants deny the allegations.

63.     As to paragraph number 63 of Plaintiff's Complaint, Defendants deny the allegations; further, Defendants note that Mansfield did not have an even colorable claim to an aircraft title arising from the "total loss" salvaged-parts purchase, which occurred third-hand after Turbines initial sale to Tempest.

**Mansfield's Attempt to Recover its Property and Grizzly's Continuing Conversion**

64.     As to paragraph number 64 of Plaintiff's Complaint, Defendants deny the allegations.

65.     As to paragraph number 65 of Plaintiff's Complaint, Defendants admit only that Plaintiff sued Grizzly, Bell, and USAU in Tarrant County, Texas and that Plaintiff voluntarily non-suited its claims against Grizzly; otherwise, Defendants deny the allegations.  Defendants note that sworn deposition testimony and documentary testimony demonstrates that the allegation that "Mansfield … purchased" a helicopter "from Turbines" is false, and, therefore, Mansfield is making a fraudulent claim for title and to a helicopter that it does not own, having purchased only the "total loss" salvage parts (not a helicopter).

66.     As to paragraph number 66 of Plaintiff's Complaint, Defendants admit that Grizzly objected to personal jurisdiction and admits that discovery was completed, including three depositions and document discovery (which Grizzly participated in), in the Texas action before Plaintiff voluntarily non-suited its claims against Grizzly; otherwise, Defendants deny the allegations.  Defendants note that the allegation that Grizzly failed to contest the merits of Plaintiff's allegations is patently false, since Grizzly's pleadings directly and specifically contested the merits of Plaintiff's allegations:  "[Grizzly] denies each and every, all and singularly, the material allegations in Plaintiff's petition, and any amendments or supplements thereto, in accordance with Texas Rule of Civil Procedure 92 and demands strict proof thereof."  Further, the Texas court indicated that it was granting Grizzly's special appearance, prior to Mansfield's voluntary dismissal.

67.     As to paragraph number 67 of Plaintiff's Complaint, Defendants deny the allegations.

68.     As to paragraph number 68 of Plaintiff's Complaint, Defendants deny the allegations.

69.     As to paragraph number 69 of Plaintiff's Complaint, Defendants admit that the Texas court did not sign an order granting Defendants' personal jurisdiction challenge prior to Plaintiff's voluntary non-suit, although the court stated from the bench that it was granting the special appearance; Defendants deny the allegations.

70.     As to paragraph number 70 of Plaintiff's Complaint, Defendants admit the allegations.

## V.    CAUSES OF ACTION

## COUNT I

### (Fraud)

71.    As to paragraph number 71 of Plaintiff's Complaint, Defendants incorporate by reference their answers to paragraphs 1 through 70.

72.    As to paragraph number 72 of Plaintiff's Complaint, Defendants deny the allegations.  Defendants note that Grizzly was not even in existence at the time of the alleged misrepresentations by Bell and USAU, which is known by Plaintiff through sworn testimony and documents from the Texas action, and that these allegations are false.

73.    As to paragraph number 73 of Plaintiff's Complaint, Defendants deny the allegations.

74.    As to paragraph number 74 of Plaintiff's Complaint, Defendants deny the allegations and state that Mansfield's claim of ownership is false and fraudulent.

75.    As to paragraph number 75 of Plaintiff's Complaint, Defendants deny the allegations.

76.    As to paragraph number 76 of Plaintiff's Complaint, Defendants deny the allegations.

77.    As to paragraph number 77 of Plaintiff's Complaint, Defendants deny the allegations.

78.    As to paragraph number 78 of Plaintiff's Complaint, Defendants deny the allegations.

## COUNT II

### (Conversion)

79.     As to paragraph number 79 of Plaintiff's Complaint, Defendants incorporate by reference their answers to paragraphs 1 through 78.

80.     As to paragraph number 80 of Plaintiff's Complaint, Defendants deny the allegations.

81.     As to paragraph number 81 of Plaintiff's Complaint, Defendants deny the allegations.

82.     As to paragraph number 82 of Plaintiff's Complaint, Defendants deny the allegations.

83.     As to paragraph number 83 of Plaintiff's Complaint, Defendants deny the allegations.

## COUNT III

### (Conspiracy)

84.     As to paragraph number 84 of Plaintiff's Complaint, Defendants incorporate by reference their answers to paragraphs 1 through 83.

85.     As to paragraph number 85 of Plaintiff's Complaint, Defendants deny the allegations.

86.     As to paragraph number 86 of Plaintiff's Complaint, Defendants deny the allegations.

87.     As to paragraph number 87 of Plaintiff's Complaint, Defendants deny the allegations.

88.     As to paragraph number 88 of Plaintiff's Complaint, Defendants deny the allegations.

## COUNT IV

### (Disparagement/Slander of Title)

89.     As to paragraph number 89 of Plaintiff's Complaint, Defendants incorporate by reference their answers to paragraphs 1 through 88.

90.     As to paragraph number 90 of Plaintiff's Complaint, Defendants deny the allegations.

91.     As to paragraph number 91 of Plaintiff's Complaint, Defendants deny the allegations.

92.     As to paragraph number 92 of Plaintiff's Complaint, Defendants deny the allegations.

93.     As to paragraph number 93 of Plaintiff's Complaint, Defendants deny the allegations.

## COUNT V

### (Declaratory Judgment — 28 U.S.C. § 2201)

94.     As to paragraph number 94 of Plaintiff's Complaint, Defendants incorporate by reference their answers to paragraphs 1 through 93.

95.     As to paragraph number 95 of Plaintiff's Complaint, Defendants deny the allegations.

96.     As to paragraph number 96 of Plaintiff's Complaint, Defendants deny the allegations.

97. As to paragraph number 97 of Plaintiff's Complaint, Defendants deny the allegations. Further, Defendants state that Mansfield is not the "true owner;" has no colorable right to serial number 53702 since it did not buy a helicopter, but bought only parts; does not (and never has) owned the data plate; was never given a registerable FAA Bill of Sale from Turbines; and never received title to the helicopter from Turbines, since Turbines never held title to the helicopter.

98. As to paragraph number 98 of Plaintiff's Complaint, Defendants deny the allegations.

99. As to paragraph number 99 of Plaintiff's Complaint, Defendants deny the allegations.

## COUNT VI

### (Constructive Trust)

100. As to paragraph number 100 of Plaintiff's Complaint, Defendants incorporate by reference their answers to paragraphs 1 through 99.

101. As to paragraph number 101 of Plaintiff's Complaint, Defendants deny the allegations.

## VI. DAMAGES

102. As to paragraph number 102 of Plaintiff's Complaint, Defendants incorporate by reference their answers to paragraphs 1 through 101.

103. As to paragraph number 103 of Plaintiff's Complaint, Defendants deny the allegations.

## VII.   SPECIAL DAMAGES

104.    As to paragraph number 104 of Plaintiff's Complaint, Defendants incorporate by reference their answers to paragraphs 1 through 103.

105.    As to paragraph number 105 of Plaintiff's Complaint, Defendants deny the allegations.

106.    As to paragraph number 106 of Plaintiff's Complaint, Defendants deny the allegations.

107.    As to paragraph number 107 of Plaintiff's Complaint, Defendants deny the allegations.

108.    As to paragraph number 108 of Plaintiff's Complaint, Defendants deny the allegations.

109.    As to paragraph number 109 of Plaintiff's Complaint, Defendants deny the allegations.

110.    As to paragraph number 110 of Plaintiff's Complaint, Defendants deny the allegations.

## VIII.   EXEMPLARY DAMAGES

111.    As to paragraph number 111 of Plaintiff's Complaint, Defendants incorporate by reference their answers to paragraphs 1 through 110.

112.    As to paragraph number 112 of Plaintiff's Complaint, Defendants deny the allegations.

## IX. DEMAND FOR JURY TRIAL

113.    As to paragraph number 113 of Plaintiff's Complaint, the allegation does not warrant a response by Defendants, and, therefore, Defendants deny the allegations.

## X. RESERVATION OF RIGHT TO AMEND

114.    As to paragraph number 114 of Plaintiff's Complaint, the allegation does not warrant a response by Defendants, and, therefore, Defendants deny the allegations.

## XI. PRAYER

115.    As to the unnumbered paragraph entitled "PRAYER" (inclusive of subsections A through E) of Plaintiff's Complaint, Defendants deny the allegations.

## XII. 12(b) DEFENSES

116.    This Court lacks personal jurisdiction over the Defendants.  Federal Rule of Civil Procedure 12(b)(2).

117.    Plaintiff's claims fail to state a claim upon which relief can be granted. Federal Rule of Civil Procedure 12(b)(6).

118.    Plaintiff has failed to join a party under Federal Rule of Civil Procedure 19, including without limitation the following parties:  Bell Helicopter Textron; USAU; Turbines, Inc.; Flight Operations Int'l that sold the parts to Mansfield; and any other purchaser/seller that exists in between Turbines, Ltd. and Mansfield.  Federal Rule of Civil Procedure 12(b)(7).

## XIII.   NON-12(b) DEFENSES

**Background:**

119.   By way of background for notice purposes (but not as a means to restrict the defenses plead), Defendants would state the following:   In 2004, Mansfield participated in an auction with regard to various salvaged parts from a helicopter that crashed into the Gulf of Mexico and that was declared a "total loss."  As part of the bid process, Mansfield signed a bid for the salvage and submitted it.  In this bid, Mansfield "agree[d] and acknowledge[d]" that the "aircraft salvage will be sold without an FAA Bill of Sale" and that the "airframe data plate will be removed and forwarded to the respective manufacturer."   The salvage was also being sold without an engine and without aircraft logbooks:  "NO ENGINE, NO LOGS – PARTS ONLY."  The data plate is the piece that gives the parts an identity as a "helicopter" and that determines the serial number of the helicopter.[2]

120.   Mansfield did not win the auction, a third-party named Turbines, Ltd. won. Turbines signed a bid acknowledging and agreeing to the same conditions that were contained in the Mansfield bid — namely removal of the data plate and no FAA bill of sale.   After winning the auction, USAU gave Turbines, Ltd. a non-FAA bill of sale, which clearly indicated that it was passing title to "aircraft salvage."  The data plate was not included as part of the sale.  The non-FAA bill of sale also stated that the salvage arose from a "total loss under [a] policy" and that the underlying aircraft "has been deregistered with the FAA."

---

[2]      14 CFR §§ 45.11 & 45.13.

121.    These conditions — particularly the data-plate removal and the non-FAA bill of sale — were imposed because the helicopter crashed and sank into salt water, taking it outside the expected operating parameters and understood environmental conditions for a helicopter and rendering the helicopter, as a whole, "unairworthy."  A non-FAA bill of sale insured that the parts could not be registered as a helicopter with the FAA registry:  "A conveyance is eligible for recording under this subpart only if … It is in a form prescribed by, or acceptable to, the Administrator for that kind of conveyance."[3]  Since the FAA regulations prevent someone from registering an aircraft bill of sale unless the "seller" is shown on the FAA records to be the prior owner,[4] a non-FAA bill of sale also functioned to prevent Turbines (or Mansfield) from ever being able to claim to have passed title to the helicopter, although it could pass title to the "total loss" salvaged parts.  The de-registration insured that the "total loss" salvaged parts remained as salvaged parts.

122.    Similarly, the removal of the data plate functioned to demonstrate that Turbines bought salvage, not a helicopter.  The parts cannot be operated as a helicopter unless they have an airworthiness certification as a helicopter.[5]  But the removal of a data plate — which was consented to by both Turbines and Mansfield — precludes the parts

---

[3]      14 CFR § 49.33 (a).

[4]      14 CFR § 49.35 ("If the seller of an aircraft is not shown on the records of the FAA as the owner of the aircraft, a conveyance submitted for recording under this subpart must be accompanied by bills of sale or similar documents showing consecutive transfers from the last registered owner, through each intervening owner, to the seller.").

[5]      14 CFR § 91.203 (requiring an airworthiness certificate).

from being eligible to obtain a certificate of airworthiness as a helicopter.[6] Further, an airworthiness certificate can be obtained only by the registered owner,[7] something neither Mansfield nor Turbines could ever claim to be, given that the conditions of sale for the "total loss" salvage did not include an FAA bill of sale.

123.   The removal of a data plate is an FAA-approved action for something that is suspected to be unairworthy or a suspected unapproved part.

124.   The bidding process was handled by USAU's Dallas office.  The salvaged parts were located at Air Salvage of Dallas.  The data plate was removed from the salvaged parts prior to any transfer of the parts to Turbines Ltd.  Also, as agreed, Turbines Ltd. received a non-FAA bill of sale.  Grizzly had nothing to do with the auction process, Turbines' purchase of the salvage, or the subsequent transfer of the "total loss" salvage to Turbines.  In fact, Grizzly was not formed until two years *after* the auction and sale to Turbines.

125.   Sometime in April or May of 2004, Turbines moved the "total loss" salvaged parts — without the data plate — out of Texas and stored them in Nebraska. From Nebraska, the parts were sold into Canada (to Tempest) and then into California (to Flight Operations Int'l).  Moreover, Marvin Kottman, the owner of Turbines, Inc. has sworn under oath that these parts were sold as "parts only," not as a helicopter:

---

[6]   14 CFR § 21.182(a) ("Except as provided in paragraph (b) of this section, each applicant for an airworthiness certificate under this subpart must show that his aircraft is identified as prescribed in § 45.11 [which governs data plates]."); 14 CFR §§ 45.11 & 45.13 (discussing requirement of data plate).

[7]   14 CFR § 21.173 ("Any registered owner of a U.S.-registered aircraft … may apply for an airworthiness certificate for that aircraft.").

> 25     Q. Okay.  All right.  So, basically, you did not
> 00060
> 1   intend to convey a -- a helicopter at the time of the
> 2   initial sale, when you first divested yourself of the
> 3   parts, right?
> 4       A.  That's correct.

Since Turbines was selling parts only, this was not an aircraft sale and no FAA bill of sale was issued to the Canadian company or to the subsequent California purchaser.

126.    In 2006 — two years after Turbines purchased the "total loss" salvaged parts and removed them from Texas — Grizzly was formed in Montana and acquired a Bell 407, which did not incorporate any of the salvaged parts purchased by Turbines. Grizzly had no connection to the sale of parts into Canada or California.

127.    In 2008 — four years after Turbines purchased the parts and removed them from Texas and two years after Grizzly was formed in Montana — Mansfield purchased some or all of the salvaged parts from an entity in California named Flight Operations Int'l.  When Mansfield purchased the parts, the salvage did not include the data plate. Prior to the purchase, Mansfield did not check the FAA registry.  No FAA bill of sale accompanied this sale from Flight Operations Int'l to Mansfield.

128.    Grizzly had nothing to do with Mansfield's purchase of the parts.

129.    After Mansfield purchased the parts, both Mansfield and Turbines unilaterally began contacting Bell and Grizzly.  Meanwhile, Marvin Kottman for Turbines had a meeting with Bell in Texas.  During this meeting, Turbines and Bell "did not discuss the sale":

> 16     Q. Okay.  Do you have any information at all --
> 17   let me just ask you, did -- did Mr. Harrington give you

18  any information about where the sale took place of that
19  407 helicopter?
20     A.  Where the sale took place?
21     Q.  Right.
22     A.  No.
23     Q.  So you got no information with regard to
24  whether the -- this alleged sale actually took place in
25  Texas, correct?
00042
1     A.  He did not discuss the sale --
2     Q.  Okay.
3     A.   -- the -- the actual transaction.

Sometime after this investigation, in 2010 or possibly 2011, Turbines Ltd. provided Mansfield with an alleged FAA bill of sale for a Bell 407 bearing serial number 53072. (Actually, it is an FAA bill of sale in form only. Since Turbines was never the registered owner, since there was no certificate of airworthiness, and since there was no data plate for the salvage, there was nothing that could be registered with the FAA.) This occurred over two years after Mansfield purchased the salvage parts from a third party, after Mansfield and Turbines "investigated" Grizzly's registration of a 407 helicopter unrelated to the salvaged parts, four years after Grizzly was formed, and six years after Turbines purchased the salvage *without* an FAA bill of sale.

130.   Prior to this, Turbines had sold the "total loss" salvage as "parts only," not as a helicopter, which Marvin Kottman was perfectly clear about in his deposition:

23     Q.  The bill of sale that we had out here on the
24  table earlier that you said that was executed here in
25  Texas, Exhibit Number 16, why did that go from
00058
1  Turbines, Limited directly to Mansfield Heliflight
2  rather than to Tempest and the entity in California and
3  then to Mansfield?
4     A.  I didn't sell them the aircraft -- I didn't

> 5   sell Tempest the aircraft.  I specifically did not sell
> 6   them the aircraft.  I sold them the fuselage.  It was a
> 7   part that I sold.

Mr. Kottman testified that it had always been Turbines intent to sell the "total loss" salvage as "parts only," not as an aircraft:

> 5       Q.  Okay.  All right.  And you didn't intend to
> 6   convey a -- an aircraft; you intended to convey parts,
> 7   right?
> 8       A.  Correct.
> 9       Q.  Which was the fuselage and the doors and the
> 10  other miscellaneous parts you told us about?
> 11      A.  Correct.

As such, when Turbines originally sold the salvage into Canada, Turbines did not sell the "total loss" salvage parts as an aircraft and did not provide the purchaser with an FAA bill of sale; the FAA bill of sale was given to Mansfield in late 2010 or early 2011, which is after the Mansfield/Turbines "investigation" of Grizzly's registration and well-after the purchase of the salvage from Flight Operations Int'l:

> 24      Q.  Did you give a -- an FAA bill of sale to
> 25  Tempest?
> 00029
>   1     A.  I did not.
>   2     Q.  Did you ultimately give an FAA bill of sale to
>   3  Mansfield?
>   4     A.  I did.
>   5     Q.  When did you do that?
>   6     A.  I want to say late 2010/early 2011.

In fact, Marvin Kottman of Turbines testified that he issued this bill of sale to "find out" what happened, suggesting that it was merely a prelude to litigation:

> 5       Q.  Okay.  What changed your mind that
> 6   precipitated the issuance of this bill of sale, Exhibit
> 7   Number 16, directly to Mansfield?

> 8    A.  What changed my mind was really everything
> 9    we've talked about today, that I'm -- I'm anxious to
> 10   find out what transpired.

Absent from this answer is any indication that an FAA bill of sale was provided "because they bought a helicopter."  That is missing because Turbines is very clear that it sold Mansfield "nothing," despite Mansfield's allegations to the contrary in the present Complaint:

> 9    Q.  Is it fair to say that you had no
> 10   conversations with Grizzly Helicopter -- Grizzly Helo
> 11   Leasing -- I'll just call them Grizzly for short -- you
> 12   had no conversations with any representatives of
> 13   Grizzly before you sold the various parts of 437PH to
> 14   Mansfield; is that correct?
> 15   A.  I didn't sell the parts of 437PH to Mansfield.
> 16   Q.  What did you sell Mansfield?
> 17   A.  Nothing.

131.    Further, as already noted, Turbines was quite clear that it had never sold a helicopter, but, instead, had sold "parts only" and in fact sold "nothing to Mansfield at all.

132.    And the circumstances surrounding this late-appearing, Turbines FAA Bill of Sale invite more skepticism regarding this alleged change in ownership.  This bill of sale is undated.  It cannot be filed with the FAA registry because it does not include the registration number of the helicopter it is attempting to register.  It cannot be filed because it does not relate back to an owner already appearing in the FAA registry (since Turbines was never a registered owner).[8] Further, the "aircraft" cannot be operated because it does not have a data plate and, therefore, cannot obtain a certificate of

---

[8] 14 CFR § 49.35.

airworthiness. Indeed, Turbines is quite candid that the reason for this alleged bill of sale is as a pretext to "find out what transpired" regarding Grizzly's registration of a 407 helicopter, not because Mansfield purchased a helicopter from Turbines, Inc. Thereby, it is no conspiracy or other act of Grizzly that prevents Mansfield from registering its supposed interest, Mansfield has an un-registerable bill of sale and it was only intended to allow Turbines and Mansfield to investigate Grizzly's business.

133. Regardless, Grizzly had nothing to do with the Turbines bill of sale or its issuance. Instead, that decision involved Turbines only, as Marvin Kottman has sworn under oath:

> 17  Q. And that was your decision alone, right?
> 18  A. It was.
> 19  Q. It did not involve Grizzly Helicopter and USAU
> 20  and Bell Helicopter with regard to your decision to
> 21  fill out this bill of sale, Exhibit Number 16, correct?
> 22  A. You're correct; they were not involved.

There is no basis for the allegation that a conspiracy or agreement exists between or among Grizzly, Bell, and USAU. Grizzly has never had any communications with Tim Harrington at Bell Helicopter. Grizzly also never discussed or had conversations with Bell or USAU regarding USAU's sale of the helicopter salvage, as Grizzly's representative has already testified under oath:

> 4  Q. (By Mr. McConwell) Did you engage in any
> 5  conversations or written communications with Bell or USAU
> 6  about whether or not the aircraft had been sold by USAU in
> 7  2004, giving all right, title, and interest in the
> 8  aircraft?
> 9  A. No.
> 10  Q. Pardon?
> 11  A. No.

| 12 | Q. You've never discussed that with Bell? |
| 13 | A. No. |
| 14 | Q. Or any of their representatives? |
| 15 | A. No. |
| 16 | Q. Never discussed it with USAU or any of their |
| 17 | representatives? |
| 18 | A. No. |

Grizzly never discussed the non-FAA bill of sale that USAU delivered to Turbines with either Bell or USAU. Grizzly never discussed the FAA's de-registration of the helicopter that originated the at-issue salvaged parts. Other than as part of the defense of the Texas action and this action, Grizzly has never traveled to Texas since 2006 to meet with Bell or anyone else. Grizzly has had no discussions with Bell or USAU regarding the USAU non-FAA bill of sale to Turbines. Grizzly had no discussion with anyone regarding the supposedly FAA-compliant bill of sale generated by Turbines.

134. In an apparent attempt to make a bogus claim and extort money from Defendants and invade their business practices, Mansfield filed suit in Tarrant County, Texas. Plaintiff sued Grizzly, Bell, and USAU. Grizzly filed an answer denying Plaintiff's claims and asserting various defenses. (Grizzly did not, as Plaintiff falsely pleads, fail to contest the merits.) Since Grizzly had insufficient contacts with Texas, it also challenged personal jurisdiction. Three depositions were taken and document discovery was exchanged. Prior to obtaining an order related to the personal-jurisdiction challenge, Plaintiff voluntarily non-suited the claims against Grizzly.

135. Although the discovery taken to date, including documents and depositions from Mansfield itself, show that the events did not occur as Plaintiff has plead, Plaintiff has persisted in its course of harassing, vexatious, and invasive litigation by filing the

current live pleading. This pleading is riddled with factual falsehoods, misleading distortions, inaccuracies, and outright mistatements.

**Statutes of Limitation:**

136. Mansfield's claims are barred, in whole or in part, by the applicable statute of limitations for conversion, fraud, slander of title, and conspiracy, including without limitation 12 Okl.St.Ann. § 95. Further, based on the allegations of Mansfield's petition, Mansfield is not entitled to the application of the discovery rule.

**Fraudulent Claim to Title/Unclean Hands:**

137. Mansfield's claims for any equitable relief, including without limitation declaratory judgment, injunction, and constructive trust, are barred by the doctrine of unclean hands as a result of Mansfield's fraudulent claim to title based upon a fraudulent Bill of Sale from Turbines, Inc., when Mansfield knew Turbines could not pass title because it did not own helicopter serial number 53702. Mansfield's unclean hands include without limitation the following facts:

1. Mansfield did not purchase anything from Turbines;

2. Turbines never received an FAA bill of sale for an aircraft; it received a non-FAA bill of sale for "aircraft salvage;"

3. The aircraft salvage purchased by Turbines did not include a data plate for an aircraft;

4. Both Turbines and Mansfield consented to the removal of the data plate as a condition of bidding in the auction;

5.      The aircraft originating the "total loss" salvage was deregistered with the FAA;

6.      The "total loss" aircraft salvage was sold without any engines or logbooks;

7.      When Turbines sold the "total loss" parts, it sold them as parts only, not as an aircraft and did not issue an FAA bill of sale for them;

8.      Mansfield bought the "total loss" salvaged parts (not a helicopter) from third parties (not Turbines) and did not receive an FAA bill of sale from them;

9.      The Grizzly aircraft was registered to Grizzly two years *before* Mansfield purchased its "total loss" salvaged parts;

10.     Prior to purchasing the "total loss" salvaged parts, Mansfield did not examine any FAA filings;

11.     After purchasing the "total loss" salvaged parts, Mansfield became aware of the Grizzly-registered helicopter;

12.     Two years after purchasing the "total loss" salvaged parts from third parties and four years after the Grizzly helicopter was registered, Mansfield obtained an FAA bill of sale from Turbines, even though Turbines had previously sold the salvaged parts to Tempest years before and even though Turbines never obtained an FAA bill of sale from anyone and even though Mansfield never purchased anything from Turbines;

13.     Turbines issued a bill of sale to Mansfield only after Turbines and Mansfield attempted to "investigate" how Grizzly acquired its aircraft;

14.     The bill of sale issued by Turbines is undated, has no registration number, and is not issued by an FAA-registered owner;

15.     Turbines issued a bill of sale to Mansfield, not because Mansfield had a helicopter, but so that Turbines and Mansfield could investigate Grizzly's acquisition of its unrelated helicopter;

16.     Turbines knew it did not possess valid title to the crashed helicopter, having purchased only "total loss" salvaged parts with no data plate, no log books, and without an FAA bill of sale from the insurer USAU;

17.     Mansfield has predicated its suit on the Turbines bill of sale, even though Mansfield was aware that Turbines did not receive an FAA bill of sale for the wreckage, even though Mansfield was aware that Turbines and Mansfield had both agreed to the removal of the data plate, and even though Mansfield was aware that the wreckage was sold without log books;

18.     Since the Grizzly's deregistration document was filed, Mansfield has made no attempt to register its alleged interest and claimed ownership of serial number 53702 because it has no data plate, because it does not own the aircraft, because it has no registerable

31

> bill of sale, because it has no title or right to title, because it cannot return the salvaged parts to service, and because it does not own anything qualifying as a "helicopter."

These facts, as well as others, indicate that Mansfield is making a fraudulent claim to title of the helicopter and has unclean hands and, therefore, is not entitled to any equitable relief.

**Consent and/or Waiver:**

138. Mansfield's claims are barred in whole or in part because Mansfield consented, acknowledged, and agreed to the removal of the data plate from the salvaged parts. As part of the bidding process, Mansfield agreed and acknowledged that the "airframe data plate will be removed and forwarded to the respective manufacturer." Therefore, any claim based on the absence of the data plate is barred by Mansfield's consent. Further, this demonstrates that no act of any of the Defendants was inconsistent with any supposed right of Mansfield with respect to the data plate because Mansfield agreed to the disposition of the data plate during the bid process.

**Intangible property:**

139. Mansfield's conversion claim is barred because, if the serial number is somehow abstracted from the data plate or other personal property, then it is intangible property not subject to being converted. Furthermore, no legal basis exists for recognizing the serial number separated from the helicopter identification data plate, which provides the only basis for the helicopter to be identified with the serial number.

**Waiver and estoppel:**

140. Mansfield's claims are barred due to waiver and estoppel. Based upon Mansfield's conduct, it should be estopped from claiming anything related to the serial number and data plate removal because it agreed to the surrender of the data plate when it bid on the "total loss" salvaged parts. Further, Mansfield purchased the "total loss" parts as salvage, not as an aircraft.

**No act inconsistent with Mansfield's alleged rights:**

141. Mansfield's claims are barred in whole or in part because there was no act or omission by any Defendant (including without limitation Grizzly) that was inconsistent with any alleged rights of Mansfield. Mansfield bought the "total loss" salvaged parts with no data plate. Mansfield agreed to the data plate being removed from the aircraft, and Mansfield has never possessed or obtained the right to possess the data plate that was removed. Thereby, Mansfield cannot make any conversion claim with respect to the data plate or the serial number. Further, to the extent that any fraud claim or conspiracy claims are, in whole or in part, dependent upon the data plate or the serial number, such claims are improper and barred.

**Proportionate Responsibility:**

142.     Mansfield's claims are barred in whole or in part by the doctrine of proportionate responsibility.  Specifically, without limitation, Mansfield's damages were caused by Mansfield and by third parties over which Defendants had no control.  Any damage allegedly sustained by Mansfield should be reduced accordingly.

**Actual and Constructive Knowledge:**

143.     Mansfield's claims are barred in whole or in part by Mansfield's actual and constructive knowledge of the events complained of and the ownership interest by Grizzly from the FAA registry in Oklahoma City, prior to purchasing the salvaged parts.

**No demand for return of the data plate or converted property:**

144.     Mansfield's conversion and fraud claims are barred because Mansfield never demanded return of the allegedly converted property, primarily because Mansfield knew it had no right to the data plate and was holding the "total loss" salvaged parts it purchased from Flight Operations Int'l and that Grizzly held no property belonging to Mansfield, let alone an entire helicopter for when it apparently seeks a "constructive trust."

**No Reliance; improper reliance:**

145.     Mansfield's fraud claims are barred in whole or in part because Mansfield did not rely upon any statement or representation of Defendants.  Mansfield was on notice of an adverse interest registered in the FAA file since 2006.  Mansfield likewise knew, at all times, that the wreckage was sold without an FAA bill of sale, without log books, and without a data plate.  Mansfield's fraud claims are barred in whole or in part

because Mansfield could not have relied upon any statement of Defendants.  Further, to the extent that Mansfield did rely upon any statement of Defendants, this reliance was not the cause of Mansfield's damages because, among other reasons, Mansfield purchased salvaged parts without a data plate and received what it purchased.

**No Duty:**

146.    Mansfield's claims are barred because Defendants did not owe Mansfield any duty.

**No Private Right of Action/no standing:**

147.    Mansfield's claims are barred because it cannot privately seek to enforce 14 CFR 45.13 (and similar regulations).  Any alleged violation of these regulations is strictly a regulatory issue for the FAA and does not vest Mansfield with any private and enforceable rights.  Further, Mansfield's pleading affirmatively states that the FAA has already declined to take any action based on the facts plead by Mansfield, which further preclude Mansfield from attempting to enforce the regulation or from claiming that a violation of the regulations occurred.  Further, when the FAA issued a certificate of airworthiness for the helicopter and otherwise, it issued regulatory approval as discussed in 14 CFR 45.13 and otherwise, and Mansfield has no ability or right to challenge such approval.  Similarly, Mansfield, since it has no proper interest in any helicopter with a serial number of 53702, does not have standing to pursue any claims, including without limitation claims based on statutes, regulation, or common-law duties.

**Preemption:**

148.    Mansfield's claims are preempted by the Federal Aviation Regulations and the regulations regarding title recordation.  *Philko Aviation, Inc. v. Shacket*, 462 U.S. 406 (1983).

**Greater right:**

149.    Mansfield's claims are barred because Grizzly has a greater right to the at-issue property than does Mansfield.  *See also Philko Aviation, Inc. v. Shacket*, 462 U.S. 406 (1983).

**Failure to Mitigate:**

150.    Mansfield's claims are barred in whole or in part because Mansfield has failed to mitigate its damages.

**Failure of the Reason-To-Expect Standard for Fraud:**

151.    Mansfield's fraud claims fail because there is no likelihood that Grizzly believed that any statement by it, whatever it was, would reach Mansfield and influence Mansfield's conduct in the same or a similar transaction.  *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573 (Tex. 2001).

**No Damages and No Causation:**

152.    Mansfield has no damages because, among other things, it received the "total loss" salvaged parts, which is exactly what it intended to buy.  Further, any proposed damages of Mansfield were not caused by any breach, act, or omission of Defendants.

## Necessary and Indispensable Parties:

153.   Mansfield's claims cannot proceed without the addition of Bell Helicopter, USAU, Turbines, Ltd., Tempest, the California entity Flight Operations Int'l that sold the parts to Mansfield, and any other purchaser/seller that exists in between Turbines, Ltd. and Mansfield.

## Responsible Third Parties:

154.   The following parties are responsible third parties:   Marvin Kottman; Turbines, Ltd.; Tempest; the California entity Flight Operations Int'l that sold the parts to Mansfield; and any other purchaser/seller that exists in between Turbines, Ltd. and Mansfield.

## Bad Faith Pleading-Rule 11:

155.   Mansfield brought this action in bad faith, based upon untrue allegations for the purpose of using the judicial process to learn about Defendants' business and business practices.  This action has been brought to harass Defendants and pose an undue burden on Defendants while attempting to gain access to confidential and proprietary business information, their business model, and customer information.

## Laches

156.   Mansfield's claims may be barred by the operation of laches.

## Superceding and Intervening Acts

157.   Mansfield's causes of action and damages may be barred by the superceding and intervening acts of others not under the control or direction of Defendants.

**Lack of Personal Jurisdiction**

158.   This Court lacks personal jurisdiction over Mansfield's claims against Defendants.

**Due Process and Other Limits for Punitive Damages**

159.   The award of punitive or exemplary damages, if any, must be reasonably related to actual damages.  An award of punitive or exemplary damages not reasonably related to actual damages violates the Constitution of the United States of America and the State of Oklahoma.

**Sole Cause**

160.   Defendants did not cause or contribute to any damages allegedly sustained by Mansfield, and any damages allegedly sustained by Mansfield were solely an Defendants had no control or direction.

**Impossibility**

161.   Grizzly and WYPT could not have committed a conspiracy with USAU or Bell because they were not even formed at the time of the alleged conspiratorial acts.

**Corporate Shield**

162.   Hall and WYPT are not liable because, to the extent that they did any act related to the matters plead, they were acting on behalf of and in their capacity as agents or operatives of Grizzly and are shielded from liability.

**Improper Fraud Pleading:**

163.   Plaintiff has not plead fraud sufficiently to comply with the pleading requirements for such claims, including without limitation Federal Rule of Civil Procedure 9(b).

**Denial**

164.   To the extent that Defendants have not expressly admitted an allegation is true, it is denied.

**Reservation of Rights**

165.   Defendants reserve the right to assert additional Affirmative Defenses as discovery warrants.

WHEREFORE, having fully answered, Defendants, respectfully request that this Court dismiss Plaintiff's Complaint against them with prejudice, and award them their attorney's fees, costs, and such other and further relief as this Court deems just and equitable.

Respectfully submitted,

*/s/ Bradley K. Donnell*
BRADLEY K. DONNELL, OBA #15922
MCAFEE & TAFT A PROFESSIONAL CORPORATION
Tenth Floor, Two Leadership Square
211 North Robinson
Oklahoma City, Oklahoma  73102-7103
Telephone: (405) 235-9621
Facsimile: (405) 235-0439
Brad.donnell@mcafeetaft.com

and

Charles H. Smith – Lead Attorney
(to be admitted *pro hac vice*)
State Bar No. 18550500
Email: chsmith@smith-moore.com
David Denny
(to be admitted *pro hac vice*)
State Bar No. 00787354
Email: ddenny@smith-moore.com
SMITH & MOORE, PLLC
3030 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201
(214) 740-4200
(214) 740-4242 – Telecopier
*Attorneys for Defendant Grizzly Helo Leasing, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on 29th day of April, 2013, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following registrants:

Clifford R. Magee, Esq.
MAGEE LAW, L.L.C.
PO Box 701800
Tulsa, OK 74170
918/747-1747; 800/747-4953 (FAX)
cliff@7471747.com
*Attorney for Plaintiff*

/s/ Bradley K. Donnell
BRADLEY K. DONNELL